UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**ERIC WARREN HEFTY**
**CHERYL RAE HEFTY**,

Debtors.

**THE CORNER DEVELOPMENT, LLC,**

Debtor.

Case No. **11-60039-11**

Case No. **11-60040-11**

## MEMORANDUM OF DECISION

At Butte in said District this 12th day of October, 2011.

In the above-captioned Chapter 11 cases, after due notice the Court held a hearing at Missoula on September 20, 2011, on "the amount of adequate protection, if any, to be awarded to" Mountain West Bank ("MWB") as a result of the Debtors' unauthorized use of MWB's cash collateral consisting of rents collected from the tenants of the University Condos in Missoula, which the Debtors had assigned to MWB prepetition. Debtors filed on July 5, 2011, a Report (Docket No. 66) and accounting of all rents received and expenditures therefrom through June 30, 2011. Debtors were represented at the hearing by attorney Harold V. Dye ("Dye") of Missoula, and Debtor Eric Hefty ("Eric") testified. MWB filed a statement of its position that all of the rents collected should be turned over to MWB, and MWB was represented by attorney Thomas Pardy ("Pardy") of Helena. No exhibits were admitted. At the conclusion of the hearing the Court took the matter under advisement. After review of Debtors' Report, the record, and applicable law, the Court is ready for decision. MWB shall be awarded a superpriority expense

1

claim under 11 U.S.C. § 507(a)(1) and (b), to be paid before all other administrative expenses, in the amount of all rents which are MWB's cash collateral which the Debtors collected since January 12, 2011.  In addition, Debtors are ordered to segregate immediately all rents collected from the University Condos into a separate Debtor-in-Possession account ("Segregation Account") distinct from the Debtors' general DIP account required by the U.S. Trustee, and Debtors are ordered to deposit all unspent cash collateral into the Segregation Account within ten (10) days of the date of this Order.

This Court has jurisdiction of these Chapter 11 cases under 28 U.S.C. § 1334(a).  This proceeding is a core proceeding involving the use of cash collateral under 28 U.S.C. § 157(b)(2)(M).

The background facts describing Debtors' borrowing from MWB are set forth at pages 2 through 17 of this Court's Memorandum of Decision entered on June 20, 2011 (Dkt. 62) which denied MWB's motion to modify stay, but which found that Debtors failed to seek and obtain authority to use MWB's cash collateral before spending rents which are cash collateral of MWB under an assignment of all rents under leases of the University Flats Condos, Ex. 5[1].  Dkt. 62, page 4.

At the hearing held on MWB's motion to modify stay on May 19, 2011, Eric testified that he stopped spending the rents and has kept them segregated.  However, at the September 20, 2011, hearing Eric testified that the U.S. Trustee told him he could not have any accounts other than his Debtor-in-Possession ("DIP") account, so the rents are deposited in that account with Debtors' other funds.

---

[1] Ex. 5 is attached to Dkt. No. 55.

The Court denied MWB's motion to modify stay, finding that MWB was adequately protected by real property. Valuation was contested at the May 19, 2011, hearing. The Court based its decision in part on Eric's testimony that he sold a condominium, Unit 202, for $255,504 cash. On September 20, 2011, Eric testified that the sale of Unit 202 did not close.

The Debtors have not filed a motion to use cash collateral, and this Court has not authorized Debtors' use of cash collateral. This case commenced on January 12, 2011, when Debtors filed their Chapter 11 petition. Debtors have not filed a Plan or Disclosure Statement. On May 18, 2011, Debtors filed a complaint in Adversary Proceeding No. 11-00040. In Adv. No. 11-40 Debtors seek a declaratory judgment that a workout agreement with MWB "vitiated and superceded" deeds of trust which Debtors' granted MWB as a security for loans. The complaint seeks to avoid MWB's liens, but the complaint is silent about the assignment of rents Debtors gave to MWB.

The accounting attached to Dkt. 66 shows that Debtors collected $42,744.00 in total rents from the University Apartments from January through June of 2011. From that Debtor paid expenses including business expenses for another property of the Debtors, utilities, U.S. Trustee quarterly payments, a magazine subscription, and rental deposit refund. The total expenses through June shown by the accounting are in the amount of $29,154.49. Eric testified that approximately $18,400 in rents which are MWB's cash collateral are left, but then he testified that they used some of the remainder to live on. MWB has not consented to the use of its cash collateral.

**DISCUSSION**

Use of cash collateral is provided under § 363(c):

3

>   (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –
>
>>   (A) each entity that has an interest in such cash collateral consents; or
>>   (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.
>
>   * * * *
>
>   (4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

A leading commentator explains that "notice and a hearing" means appropriate notice and perhaps no hearing at all, unless there is an objection, and the notice and hearing may be informal so the court can quickly grant authority to use cash collateral for pressing needs. 3 Alan N. Resnick, Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 363.03[4] (16th ed. 2010). The Debtors did not obtain MWB's consent to their use of its cash collateral. They did not segregate the cash collateral. Further, Debtors did not satisfy the requirement to obtain this Court's authority, after notice and hearing, before they spent at least $29,154.49 of cash collateral.

A person who has consulted with an attorney "can be charged with constructive knowledge of the law's requirements." *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987). Debtors' attorney Dye has decades of experience practicing bankruptcy law before this Court. Debtors' unauthorized use of cash collateral in this case violates longstanding law in this district and this circuit.

At the hearing Dye argued that this Court should allow Debtors to use MWB's cash collateral to protect MWB's collateral. Rule 9013, F.R.B.P., requires that a request for an order "shall be by written motion." This case has been pending since January 12, 2011, and this Court

found an unauthorized use of cash collateral by Debtors more than 3 months ago on June 20, 2011. Debtors have never filed a written motion to use cash collateral, and have never been granted the authority. Their argument that their use of cash collateral protected MWB's other collateral would be relevant if they had filed a motion seeking authority under § 363(b)(2), but it is not relevant now.

The Ninth Circuit has found that "the purposes underlying 11 U.S.C. § 363(c)(2) and (4) require that a debtor seek affirmative *express* consent from all parties involved before using cash collateral." *In re Gall*, 12 Mont. B.R. 133, (Bankr. D. Mont. 1993), quoting *Freightliner Market Development Corp. v. Silver Wheel Freight*, 823 F.2d 362, 368 (9th Cir. 1987). The Ninth Circuit wrote: "Unless the Trustee gets a court order or consent, he is obligated to segregate and account for any cash collateral in his possession, custody, or control. 11 U.S.C. § 363(c)(4)." *Freightliner*, 823 F.2d at 362. Debtors failed to get a court order or MWB's consent, and therefore was obligated to segregate and account for MWB's cash collateral. Debtors failed to get a court order, failed to segregate the cash collateral, and spent cash collateral without court authority, as Eric testified and as shown by their accounting.

In *Heiser v. Alaska USA Federal Credit Union*, 17 Mont. B.R. 53, 62-63 (Bankr. D. Mont. 1998), this Court quoted Hon. Alfred C. Hagan's decision *In re Lough*, 163 B.R. 586, 587-88 (Bankr. D. Idaho 1994). Judge Hagan explained:

> Because the amount debtors held on deposit with ICCU is cash collateral for ICCU's security interest . . ., the debtor is forbidden from using such cash collateral without either the permission of ICCU or authorization of the Court. 11 U.S.C. § 363(c)(2); *Nat'l Bank of Georgia, Inc. v. Air Atlanta, Inc. (In re Air Atlanta, Inc.)*, 74 B.R. 426, 427 (Bankr. N.D. Ga.), *aff'd*, 81 B.R. 724 (N.D. Ga. 1987); *Williams v. Am. Bank of the Mid-Cities, N.A. (In re Williams)*, 61 B.R. 567, 571-72 (Bankr. N.D. Tex. 1986); *Edgins,* 36 B.R. at 483.

5

> \* \* \* \*
>
> Alternatively, ICCU denied to the debtors its consent to use the cash collateral – a power expressly given ICCU under section 363(c)(2)(A). Or to put it another way, ICCU merely acted to prevent the debtors from wrongfully depleting the account in violation of section 363, an injury that might well be impossible to remedy. *See Williams*, 61 B.R. at 575 (noting potential lack of any remedy for dissipation of cash collateral.

163 B.R. at 587-89.

In *Lough* the creditor imposed a freeze on cash collateral to protect its right to setoff when it denied the debtor consent to use cash collateral, which the court found was not a violation of the automatic stay. *Id.* In the instant cases the Debtors did not obtain MWB's consent, and Debtors used the rents, which are cash collateral without Court authority and wrongfully, creating a situation which the courts have recognized might lack a remedy. *Lough,* 163 B.R. at 587-589; *Williams*, 61 B.R. at 575.

This Court was confronted with debtors' repeated unauthorized use of a bank's cash collateral without consent or court order in *In re Gall*, 12 Mont. B.R. 133 (Bankr. D. Mont. 1993). The Court proceeded as follows:

> [T]his Court will not countenance Debtors' repeated unauthorized use of the Bank's cash collateral without consent or Court Order, and is determined that Debtors shall reap no advantage from their cavalier attitude toward § 363)(c).
>
> The Ninth Circuit has found that an injury such as the Bank's, while not literally within the provisions of 11 U.S.C. § 507(a), is clearly within its intent, and deserves to be remedied by granting a superpriority to the Bank over all other administrative claims. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1451 Ftn. 23 (9th Cir. 1985); *In re Blehm Land & Cattle Co.*, 859 F.2d 137 (10th Cir. 1988); *In re California Devices, Inc.*, 126 B.R. 82 (Bankr. N.D. Cal. 1991) (scope of § 507(b) extends to any proven, actual loss on use of cash collateral where adequate protection fails.). Under these circumstances, this Court deems it appropriate to grant the Bank the equitable relief called for by *Center Wholesale*, even though the Bank, like Owens-Corning, failed to request adequate protection. 759 F.2d at

6

> 1451. There was no need for the Bank to request adequate protection[2], because the Debtors were prohibited from using cash collateral by § 363(c). *In re California Devices, Inc.*, *supra*, at 85. Debtors violated that section by using the $20,450 in cash collateral without consent or Court order to construct a potato cellar. This Court is not satisfied with the Debtors' provision for repayment of the $20,450 under the Plan is light of their clear violation. I therefore find the Bank's motion for payment of administrative claim to be filed for good cause with respect to the $20,450, and that amount shall be granted superpriority as an administrative expense under 11 U.S.C. § 507(a)(1) and (b), to be paid before all other administrative expenses.

*Gall*, 12 Mont. B.R. at 138-39.

Applying this rule to the instant case, the Debtors' accounting shows that they spent $29,154.49 in cash collateral without MWB's consent and without Court authority. They have not filed a Plan, so have not provided for repayment of the cash collateral. They have not segregated MWB's cash collateral as plainly required by § 363(c)(4)[3].

Faced with Debtors' clear failure to comply with § 363(c), this Court finds good cause to grant MWB a superpriority of all of its cash collateral rents which the Debtors have failed to segregate, and spent without Court authority. The current record shows that amount at $42,744.00 through June of 2011, but that amount will be increased in future proceedings to include all rents.

At this time the Court will not allow the Debtors any adjustment for rents which they contend were spent to protect MWB's other security. Those rents were spent without court authority in violation of § 363(c)(2). This Court is determined that Debtors in the instant case, and in other cases, "shall reap no advantage from their cavalier attitude toward § 363(c)." *Gall*,

---

[2]This sentence suggests that this Court was imprecise to characterize the issue as one of adequate protection, since Debtors are prohibited from using cash collateral by § 363(c)(2).

[3]Section 363(c)(4) applies regardless of what the U.S. Trustee might say.

12 Mont. B.R. at 138-39.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above: (1) awarding Mountain West Bank a superpriority administrative expense claim under 11 U.S.C. § 507(a)(1) and (b) in the initial amount of $42,744.00, plus additional amounts to be fixed by subsequent Order of this Court; (2) ordering Debtors to segregate immediately all rents collected from the University Condos into the Segregation Account; and (3) ordering Debtors to deposit all unspent cash collateral in their possession, which may have been deposited into the DIP Account since the petition date, into the Segregation Account within ten (10) days of the date of the this Order.

**IT IS FURTHERED ORDERED** that any distribution from the Segregation Account shall be by subsequent Court Order.

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana